Good morning, Illinois Appellate Court, 1st District Court is now in session. The 3rd Division, the Honorable Justice LeRoy K. Martin presiding, case number 24-0827, People v. Paul Woodhouse. This is Martin. We can't hear you. I think you're muted. There you are. Oh, you're muted. Can you hear me now? Yes. Wonderful. All right. Technical difficulties, folks. Technical difficulties. We'll get there. Good morning again to counsel. Would counsel for the appellant introduce yourself for the record? Good morning, Your Honors. Chan Yoon on behalf of the appellant, Paul Woodhouse. Good morning, Mr. Yoon. And for the appellee? Good morning, Assistant State's Attorney Margaret Hillman on behalf of the people of the state of Illinois. Very good. It is normally our habit to allow 15 minutes for each side for argument. And of course, we'll make room for questions as well in that. Mr. Yoon, would you care to reserve some time for rebuttal? Yes, please. Five minutes. Thank you, Your Honors. Very good. Then with that, if there's nothing else, then Mr. Yoon, the floor is yours. Thank you. Good morning, Your Honors. May it please the court, State's Attorney. So this morning, I'd like to address issue number one from the briefs. But if Your Honors have any questions on issue two, I'm more than happy to address them. The state failed to prove beyond a reasonable doubt that Paul Woodhouse owned the Glock 43 handgun that was recovered from his Chevy Impala. There was a reasonable explanation for the presence of the gun in his car, namely Rodney Jones's testimony that he had borrowed Woodhouse's car three days before the arrest and had left his gun in the hidden compartment inside the car. Mr. Yoon, but the trial court did not find Mr. Jones's testimony credible. So aren't you asking us to reweigh the trial court's determination of credibility here? Yes, we are. And this court can do so because in this case and this court held in People v. Williams that and I'm citing from that case when the fact finder disregards defense testimony that is internally consistent and corroborated by the record, that actual or that credibility determination can be set aside. Here we do have Jones's testimony and that we have the only real neutral evidence in this case in the form of the receipt that confirms that Jones did purchase the exact same model of gun, a Glock 43 handgun about a year before the incident. But what about the issue that he didn't even know what kind of weapon he purchased? First, he says it's a Smith & Wesson. And then later on after I'm redirecting, he says, oh, yeah, well, it was a Glock. These are two different type of weapons. They're very distinct in nature and appearance. Yeah, that's true. And he did not recall the model. But if you look at the receipt, it bears his name on his actual name appears on the receipt. And the model of the gun also appears on the receipt. So it can't be disputed that Jones did indeed purchase a Glock 43 handgun a year before this incident and that he was the owner of such a gun. So we do have neutral evidence that supports his testimony. The fact that he didn't remember the model just seems to support the fact that he is a forgetful person, the type of person that would leave a firearm in someone else's car after borrowing it. Well, wasn't the trial court in a better advantage than we are? I mean, all we have is the cold record. Right. And the trial court was able to observe and assess the witness as the witness was testifying on the witness stand. We don't have that advantage. So we have to take from what's in the cold record. But a trial court was able to not only hear the testimony, but they were able to observe the witness. That's correct, Your Honor. But if we're just going to allow the trial court to make the credibility determination, then any reasonable doubt argument based on credibility just cannot be raised on appeal. And that's certainly not the case. I mean, certainly in People v. Williams, which is a case from 2008, a reasonable doubt argument was raised based on a credibility determination. So, of course, the trial court is in a better position. I'm not denying that. But that doesn't mean that this court is bound to the trial court's findings. The trial court's findings are not gospel in this case, especially when we do have neutral evidence. The only piece of neutral evidence here supporting the defense's theory of the case. It's just it's also if you just think about this logically, it's either that Jones and Woodhouse each separately purchased a Glock 43 handgun. And there was two separate guns of the hundreds, I don't know, maybe thousands of handgun models that are out there. They both happen to own the same gun or which I think is the much more logical conclusion to draw from the facts that it that it was Jones's gun that was left in the car. Again, something that's supported or an inference that supported by the receipt here. So, this forgetful witness that you're talking about, Mr. Jones also forgot that he left a gun in someone's vehicle that was fully loaded and didn't even tell the driver or the owner of the vehicle that there was a weapon that was fully loaded in the car. I mean, I'm not asking us to believe that. Well, I'm your honor. I'm not I, you know, there's a receipt that supports his testimony that he is the owner of my question. My question is, this gentleman leaves a weapon in the vehicle. He doesn't tell the owner of the vehicle. He leaves a fully loaded Glock in his in his car. Well, I mean, I'm not here to judge Mr. Jones's memory or what his how he goes about his life. He remembers general facts of about what happened. I certainly he didn't remember the model of the gun. But again, like that, even though he didn't remember that he clearly did purchase the gun. The receipt confirms that. So, that's not my question. My question is that he left a weapon, a fully loaded weapon in someone's vehicle and then forgot to tell them that he left a fully loaded weapon in the vehicle. And, you know, that weapon was in there for at least maybe about 2 days, a day and a half. Well, he forgot it and that's what his testimony was. Again, this is the type of person that doesn't seem to be very careful about what's while going about his day. He didn't even remember the model of the gun, even though he clearly had purchased a gun. And the fact that Woodhouse wasn't aware of the gun when he entered the car, I think that's not very unusual. It was in a hidden compartment of the car when a person drives a car. I mean, I certainly don't check the glove box or center console or any every hidden area of my car before I go for a drive. So, it's certainly plausible. I mean, again, it's either they both purchased a Glock 43 at some point in the past and they both decided independently to buy the same handgun or it's the same gun that Jones had purchased a year before the incident. And I would submit to this court that that's the much more logical inference to draw from the evidence as a whole. And I think it's also important to note that Jones did not really have motivation to lie here. I mean, he actually exposed himself to criminal liability by testifying on Woodhouse's behalf. His card was revoked in February 2021. This incident took place in August 2021. So, at that time, he was in violation of the law, possessing a gun without a valid card. And at the time of trial, the three-year statute of limitations had not told as it was the trial took place in December 2023. So, I think, well, let me let me ask you this. During his testimony, I don't believe either the state or defense ever asked him if he forgot the firearm or why he left the weapon in the defendant's vehicle. Does that matter? Well, I mean, why? I guess it doesn't really matter. He did it. I assumed that it was because he was forgetful. I don't know if there was a nefarious purpose on his part, but. But that's my question. Where's this forgetfulness coming from? Is it coming from the defendant or is it coming from Mr. Jones? Because I believe in the record, it doesn't appear anywhere that he was asked. Did you forget it in the vehicle? I mean, it's coming from Jones because he's the one who left the weapon in the car. Woodhouse just unknowingly drove the car with the weapon inside. I don't think we can say that Woodhouse is the one who was forgetful here. He just did what any person would do, just drove his car after his friend borrowed it without checking every compartment in the car, which I don't think is an unreasonable thing to do. I don't think that common experience says that that's something that he should do as the owner of the car in order to avoid criminal liability. So, yeah, I mean, to answer your question, your honor, I think it's Jones who is the forgetful one here. Yeah. So and just as I was talking about with the hidden compartment, I just want to point out that it's not something this compartment is not something that Woodhouse installed himself, or it's like custom made for this car. It's factory installed. It's in similar model. I assume it's in every similar model of Chevy Impala. So Jones could have found this compartment himself, or maybe Woodhouse had shown him at some point just because it was in this hidden compartment does not mean that only Woodhouse was able to put it in there. And again, the fact that it was in there shows that he did not have knowledge of knowledge of the gun since Jones had borrowed his car three days before the arrest. So, well, doesn't people be given kind of provide us some guidance here in terms of whether there was an inference of knowledge since he was in control of vehicle. It was the owner of the vehicle, and it was in close proximity to him at the time when the stop was affected. Right, but you still have a knowledge element and that knowledge element was not there. He, he, again, like, as I was saying before, when you enter your car after someone borrows it. I don't think the law requires you to check every compartment to ensure that there's no contraband there. Right. So if there happens to be contraband there. I think you can honestly say you don't have knowledge of it. And that's unfortunately what happened to Woodhouse after he let Jones borrow his car in this case. So, do you have any cases on that point? Well, I, well, we, the cases I cite, they're not exactly the same factual scenario as our case. We have people, the Bailey people, the Hampton, where you have contraband in a hidden location in the car and and the defendant being in the car near that contraband. But weren't those individuals passengers? It's a difference, isn't it? Certainly, it's a difference, but in the same way, we're talking about knowledge here. I mean, I don't, I don't think you can prosecute someone if, if someone leaves like drugs in your glove compartment and you happen to drive the car the next day. There's no duty on you to check every compartment of the car before you go in. And I don't think that's something we want to do either. I mean, that's just, I think, from common experience, we do, we drive our cars, expect without having to check everything in order to avoid going to jail. Right. So, yeah, I mean, I can't cite like an exact factual scenario from Illinois case law that's similar to this case, but I think the knowledge element for constructive possession, I think, certainly applies here. Where, where, again, although Woodhouse was the owner of the car, he let someone else borrow it. And certainly, what happened is someone put contraband in his car without his knowledge. And there was no reason for Woodhouse to know that the gun or contraband was there. Very good. Are there any, any other questions? Justice Rochford, Justice Reyes? No, thank you. Okay. All right. Very good. Thank you. Ms. Hillman? Yes, may it please the court. Again, I am assistant state's attorney, Margaret Hillman, and I represent the people of the state of Illinois. In viewing the evidence in the light most favorable to most favorable to the people, any rational trier of fact can and did find the defendant guilty of unlawful use of a weapon by felon. Now, what's important here is for the people to prove the defendant guilty of UUW felon, they must establish the defendant had knowing possession. Knowing possession is very different than the defendant, than proving the defendant purchased the gun or proving that the defendant was the owner of the gun, which is a distinction from what defense counsel just said moments ago. The state does not have to prove that defendant was the owner or defendant was the purchaser, merely that he had knowing possession. Now, this is a constructive possession case, which means the state has to establish that the defendant had knowledge of the weapon, of the presence of the weapon, and that the defendant exercised immediate and exclusive control over the area where the weapon was found. Now, knowledge can be proved through circumstantial evidence, but what's important here is that defendant's knowledge can be inferred because the defendant had regular ongoing control over his car. I'm sorry, Ms. Hillman, how do we know that? The defendant is the registrar. The witness, Jones, had the vehicle for at least about a day and a half. All right. So, you know, given the fact that the defendant is the owner, but how do we know that he had control over the vehicle prior to the stop other than being the driver? Your question assumes that Jones was being truthful. I'm not making an assumption. I'm just asking. Well, the court found that Jones testimony was not credible. It gave it very little weight. The testimony that he borrowed the car is included in that. The only testimony that Jones ever borrowed the car came from his own mouth. Jones was a forgetful witness at best. The only evidence linking Jones to the gun came primarily from defense counsel during leading questions and for refreshing his recollection with this receipt. What about the receipt? I mean, defense is saying that Jones's name is at the bottom of the receipt. So he bought a gun. He doesn't remember what type of gun it is. Can we take that into consideration? There is absolutely no authentication, authentication of this receipt. There is no store name on the receipt for it to ever have been verified. Jones testified that he purchased a Smith and Wesson. This receipt is a Glock. What is is for a Glock. What is even more alarming about Jones testimony saying that he purchased a Smith and Wesson was he said that moments after defense counsel tried to lead him on the fact that the gun was a Glock. We're not here to discuss whether or not Jones purchased a Smith and Wesson or a Glock. It's whether or not the defendant had possessory interest in that firearm at the time that he was arrested. Jones testimony simply is not credible. Some of the things, some of the details. Let me ask you this. We know from the record. We don't know if he forgot it or not, because he's never asked that question. If you forgot the weapon in the vehicle. Correct. He states that he left it in the vehicle. Whether or not he stated he forgot it or he left it or whatever his reasons were, the trial court did not find him credible. And that credibility determination is something for the fact finder to make. The trial court here had the opportunity to observe Jones credibility from the stand, how he testified and gave his testimony no weight. And rightfully so. Well, Jones didn't know the model of the gun. He didn't know where it was purchased. He didn't know the serial number. He also inexplicably said he didn't own any firearms, failing to mention the firearm at issue. But also, if he didn't, if this was the only gun he had owned and he had owned it for a year, wouldn't it make sense that he would know something about it? And also, this is a man who he said that he borrowed the defendant's car at 10 p.m. and gave it back to him the same day. So he presumably had this car for two hours. And in that two hours, he decided to bring his gun and then somehow forgot that same gun. It wasn't a day and a half. I'm sorry to just have a question in terms of the record. Wasn't it more than like a day and a half when he had the vehicle? I thought he had testified that he gave it back the same that he took it at 10 p.m. And that he he said on page 120 of the records of proceeding, he says, how many days did you have this vehicle for? It was just for a day. He gave it back same day. OK. I'm sorry. And then possibly the most telling. For why the trial court would completely discount all of Jones testimony regarding the gun and regarding the defendant's car, is that when he testified, he said he put the firearm in a glove box compartment. The only way that it came back to this. To the compartment on the driver's under the driver's control panel was when he was led by defense counsel. He didn't even know the compartment he put the gun in. There is absolutely nothing connecting Jones to the defendant's car and nothing connecting Jones to this firearm except Jones. Incredible and inconsistent testimony. Let me ask you this question. Was there any forensic evidence at all? Fingerprints, DNA or anything tying the defendant to the to the weapon? No, there was not. In line with that, my question would be putting aside the evidence that the defense presented and Mr. Jones, what I what is the evidence that you say proves the constructive possession beyond a reasonable doubt? So I think we can all agree that the defendant exercised immediate control over the car. He was the registered owner. He was the driver. He was the sole occupant. The gun was found inside his car. As far as the knowledge element goes, the defendant's knowledge can be inferred by his regular ongoing control over the vehicle. This is his car. He was the only one in it at the time that he was driving. He is the registered owner. And. In the human experience, you are not going to guns, don't just show up in your car without your knowledge of it. And that is why the courts have been able to infer knowledge based on regular ongoing control over your vehicle. It is presumed that, you know, what is in your vehicle, but also knowledge can also be proved from other relevant circumstantial evidence. And in this case, we have consciousness of guilt during the traffic stop. The defendant was being arrested for a warrant. Now, he claimed to have paperwork saying that that warrant was quashed. Had that been true, none of this would have happened. He would have been let go on his way. His car would not have been searched. That gun would not have been found. But instead of allowing the police to get that paperwork, he was adamant that he did not want them to. And why was that? Because he knew the gun was in the car and he knew that he did. He was not legally allowed to possess it. How does that weigh with the officer's testimony saying that actually the defendant was very cooperative that, you know, but for the warrant, he probably would have let this guy go or given him a citation and then letting him go. So isn't that kind of contrary to this consciousness of guilt? I mean, he was he pulled over right by where there was light, you know, and he pulled over shortly after the lights went on and spoke with the officers. Didn't seem to be, you know, in any way abusive or, you know, or assertive in another manner. So how does that go to your argument? You can have consciousness of guilt without being abusive towards the police and resisting the police. Here he has consciousness of guilt. He knows what's in the car. So he doesn't want anyone to search the car to go along with that. He also did not want the car towed. Now, on appeal, the defendant contends that that's because of the cost. However, that was never the cost of how much it was to tow the car or not tow the car was not presented at trial. Reasonably, they just didn't want his car damaged. I think it's a leap to assume your car would be damaged based on a tow. But again, the whole situation could have been avoided if he had just let the officer search the car for the warrant paperwork. But he did not want that because he knew a search of the car would reveal an illegal firearm. And so if we have control here, does that make knowledge sort of irrelevant? I mean, you know, it's obvious we have control. He's the driver. It's his car. And he's the sole person in the vehicle. So if we look at the concepts of, you know, control and knowledge in this case, since we do have so much circumstantial evidence and control, doesn't that make knowledge sort of irrelevant here? No, it doesn't. Not in this case. In this case, both control and knowledge can be proved by by the same parts of the evidence. So control and knowledge can both be proved by the fact that he is the registered owner, the sole occupant and the driver. But also there is circumstantial evidence that can also prove his knowledge that corroborates the defendant's inference of regular ongoing control. Additionally, given all of that evidence and given that Jones' testimony was rightfully completely dismissed by the trial court as inconsistent, the trial court properly found that the defendant was proven guilty beyond a reasonable doubt of unlawful use of a weapon by felon. So you're saying that mere proximity or close proximity equates control or intent or possession, right? Mere proximity? Yeah, well, it's close to him, right? I mean, it's in his car. It's not just close to him. He has control over the car and the area in which the gun is found. He's the owner. This is not like the cases Bailey and Hampton that the defendant cited in both Bailey and Hampton. Those were passengers. That was not their car. The gun was underneath. I believe it was both guns were hidden. Those are situations where the defendant had proximity to a gun. But they did not have control here. The defendant did not just have proximity. He had proximity and control over the gun. He was the only person to have control over that gun because he was the only person in the car. He is the registered owner of the car and he was the driver of the car. So it's not mere proximity, but proximity plus control. So I want you to wear another hat right now. If the defendant was unaware of the presence of the firearm inside the compartment, how would he be able to establish that? How would he be able to prove that? Well, you mean, how would he how would he combat that inference? Yes, he could testify at trial. He could bring in a witness who was credible that could give a credible reason for how the firearm got there. Presumably, if the firearm got into the defendant's car without his knowledge, then someone else would have to have knowledge as to how that firearm got there. And that person would come in and say, that's how it got there. Not a person like Jones, who testified that he inexplicably left it there, can't tell us the type of firearm he left there, can't tell us any information about it, even where he bought it or even where he left it in the car. It just makes absolutely no sense to try to take Jones testimony at face value when any testimony linking him to the gun or the car was provided through defense counsel's leading and refreshing his recollection with an unauthentic receipt that could have been typed up on a typewriter. There's nothing on there that allows anyone to be able to verify it. Thank you. So if there are no more questions, we ask that this court affirm defendant's conviction and sentence for unlawful use of a weapon by felon. Thank you, Ms. Hillman. Mr. Young, you may have the last word. Thank you, your honors. Just to the point first about the receipt not being on inauthentic or on, on, on. I can't say that word inauthentic or not real, whatever it is. I feel like the state had waived that argument at trial. They didn't challenge that at trial. You want to bring it up now, since it is the only piece of neutral evidence here, then it really supports defense's theory. But I don't think we can say that there is something wrong with the receipt here. I mean, the state, if there was, if that was the case, the state should have challenged that at trial. They did not. So by doing so, there's no dispute that this receipt is legitimate here. And again, it doesn't look like it's typed on a typewriter. If you look at the picture, it's not actually, if you look at the exhibit in the record, it's a picture of a receipt. And it very much looks like a receipt. If this was a forgery, I mean, they went through great lengths to make this a forgery. So I don't think that's the case here, just from an objective point of view. But in any regards, the state forfeited any any challenge to to the realness of the receipt. So I think your honors can disregard that argument. As for Jones's credibility. Yes. I mean, as the state always argues. And in these in their closings, we don't the defense doesn't pick their witnesses either. If they wanted a witness who was going to be credible, according to the state, who would tie everything up in a little nice little bowling box, then that would have been great. And I guess the state would have no dispute here. But what we don't show what else can't pick his witnesses. He doesn't pick his friends. He doesn't. We can't have Jones lie here. He was just telling the truth. He does this again. This is not someone who's like remembering every single detail of his life, clearly. But this receipt shows that he purchased a Glock 43. And there happened to be a Glock 43 in Woodhouse's car only three days after he borrowed it. So I think the most logical inference to draw is that the Glock 43 belonged to Jones. Finally, as for the knowledge element, that if you're the owner of a car, you're responsible for everything in the car. Certainly, a year had passed since Jones had borrowed the car. You know, maybe then Woodhouse should have known that there was contraband in the car, but there only three days had passed. So for. For us to conclude that you're the owner of the car, you should have checked everything before you've driven it to ensure there is no contraband. I don't think that's a standard we want to set for the citizens of Illinois. I think that's very invasive. You know, as an example, I mean, just as an example from my own life, you know, my we're looking for my kid's toy that happened to be in the center console. I didn't check for for a week or several weeks, and then I finally found it. I didn't have knowledge of it, even though I'm the owner of the car. Like I own my car. I'm the registered owner. But I didn't know my my kid's Lightning McQueen toy was in there. So, I mean, it's just that's just not something we want to impose on the citizens of Illinois. And again, to what house is alleged nervousness or uncooperative this again, officer Mendes said he was cooperative. He was he was and he just didn't want to go through the hassle as anyone would of getting his car impounded by the police. That's such a huge inconvenience. I don't think anyone, any citizen here would want that to happen. There's so many fees that go with it. Your car could get damaged. I mean, I don't think you have to submit that as evidence to infer that that's why you don't want your car towed. So, again, just to sum everything up, we had the only neutral evidence here supports the defense's theory. It confirms that the gun belong to belong to Jones. The alternative theory is that Woodhouse also bought a Glock 43 at some point, and they both own the same type of handgun out. The hundreds of handguns that you could choose. Right. So on that basis, we would ask that your court this court reverse Woodhouse's convictions and convictions outright. Thank you, your honors. Thank you. Thank you. Any question? No. Well, I want to thank both of you for a very interesting argument. Miss, you know, I'm a little disappointed that you didn't know about the Lightning McQueen boy in the Senate council. I think, you know, you want to make sure you just leave them in random places. Of course he does. Of course he does. All right. Well, thank you much to both of you. We will get a written decision to you in a reasonable length of time. And with that, we will stand adjourned. Thank you. Thank you. Thank you both. Thank you.